UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARLO GATEWOOD,

          Plaintiff,                               Civil No. 07-13326
                                             Judge Victoria A. Roberts
v.                                          Magistrate Judge Steven D. Pepe

MICHAEL J. ASTRUE,
COMMISSIONER
OF SOCIAL SECURITY,

          Defendant.
_____/

## ORDER

## I.    INTRODUCTION

This matter is before the Court on the parties' cross Motions for Summary

Judgment. Magistrate Judge Steven D. Pepe recommends that the Court GRANT

Defendant's motion and DENY Plaintiff's motion. The Court **ADOPTS** the Magistrate's

recommendation.

## II.    PROCEDURAL HISTORY AND FACTS

Magistrate Pepe adequately summarizes the relevant facts and procedural history.

His summary is incorporated by reference.

## III.    STANDARD OF REVIEW

In the Social Security context, the district court reviews the decision of the

Commissioner for a determination of whether the decision exceeds statutory authority or

is arbitrary and capricious. *Sullivan v Zebley*, 493 U.S. 521 (1990); *Bowen v Yuckert*,

1

482 U.S. 137, 145 (1987).  This Court must review the ALJ's decision to determine

whether it is supported by "substantial evidence."   "Substantial evidence is more than a

scintilla of evidence but less than a preponderance and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Brainard v*

*Secretary*, 889 F.2d 679, 681 (6th Cir. 1989), citing *Consolidated Edison Co. v NLRB*,

305 U.S. 197, 229 (1938).  It exists when a reasonable mind could accept the evidence

as adequate to support the challenged conclusion, even if that evidence could support a

decision the other way.  *Casey v Secretary of Health and Human Services*, 987 F.2d

1230, 1233 (6th Cir. 1993).  This standard presupposes that there is a "zone of choice"

within which the Administrative Law Judge ("ALJ") may make a decision without being

reversed.  *Felisky v Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  In other words, if the

Commissioner's determination is supported by substantial evidence, it must stand

regardless of whether the reviewing court would resolve the issues of fact in dispute

differently.  *Bogle v Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  The Court must only

review the record that was before the ALJ and cannot review the evidence *de novo*,

weigh the evidence, nor make credibility determinations.  *Id.*

IV.    **ARGUMENTS**

There are five factors that the Social Security Administration uses to determine

eligibility for benefits.  Plaintiff must establish that: 1) she is not presently engaged in

gainful employment; and 2) she suffered from a severe impairment; and 3) the

impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 and was of sufficient duration.  If Plaintiff does not meet her

burden at Step three, she may still meet her burden at Step four by proving she did not

have the "residual functional capacity" ("RFC") to perform past work. *Jones v Comm'r of Soc. Security*, 336 F.3d 469, 474 (6th Cir. 2003).

If Plaintiff satisfies her burden, the burden shifts to the Commissioner for the fifth factor to show there is other work available in the economy that the claimant can perform. 20 C.F.R. 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id*.

## A.     Plaintiff's Claims

Plaintiff Marlo Gatewood seeks disability benefits from December 26, 1999 through June 1, 2001 for depression, anxiety attacks, sleep apnea, arthritis, alcoholism, asthma, knee problems, sarcoidosis and obesity. Plaintiff completed high school and two years of college. Her past relevant work experience includes employment as a cashier and school satellite aide.

Plaintiff says she did not finish college due to health and mental problems. Tr. 551. At that time, she was treated for depression and overdosed on Prozac. Tr. 551. When she was younger, she received mental health treatment during an inpatient admission at Havenwyck Hospital, as well as during outpatient counseling provided by Black Family Services. Tr. 551 - 552.

Plaintiff claims she has had very little employment over her lifetime, but worked as a cashier and school satellite aide. However, she was terminated from those jobs

because she was: (1) constantly sick; (2) attending doctor visits three to four times per week; or (3) could not stand very long. Tr. 552. Plaintiff last attempted to work in October 1999. Tr. 565.

Plaintiff also testified that she suffers from asthma and has at least four asthma attacks per week. Tr. 553. For treatment, she uses a nebulizer at least three times per day and a rescue inhaler. Tr. 553. Also, she claims she suffers from anxiety attacks and depression. Tr. 554-555. She takes Prozac for her depression. She usually isolates herself because she gets scared around others and does not interact well with people. Tr. 556-557. She also testified that she has "intermittent explosive disorder", which causes her to "blow up" and "go over the hill" when exposed to stressful situations. Tr. 557. (Intermittent explosive disorder is classified as an impulse-control disorder in the DSM-IV, 312.34). Plaintiff cries at times without explanation. Tr. 558.

Plaintiff was diagnosed with Sarcoidosis. Tr. 558. As a result, she claims to suffer from joint pain in her hand, wrist, shoulder, knees, left ankle, and lower back. Tr. 559. She usually walks with a cane. Tr. 559. She can stand for 30 minutes supported by the cane or another object, if she shifts her weight. Tr. 560. She can only walk for one block before she is out of breath or before her knees hurt. Tr. 560. She weighs 272 pounds and has had a weight problem for the majority of her life. Tr. 561. She attributes her weight, in part, to increased hunger, which she says is a side effect of steroids and inhalers. Tr. 561.

Plaintiff has three minor children. Tr. 567. She testified that she does a "pretty good job at parenthood" and makes sure the children attend school and are supervised. Tr. 567. She says she receives state aid to pay a person to assist with cooking,

laundry, and other household chores. The children also help with chores. Tr. 567-568.

She does not walk up and down the stairs and does not vacuum.  Tr. 568. She sits

when she washes the dishes. Tr. 568.  On a typical day, she sits on the couch watching

television or reads books. Tr. 568-569.  She testified that she has difficulty sitting at

times because she gets "stiff". Tr. 569.  She does not lift anything over five pounds

because she believes she will get hurt. Tr. 569.  She has arthritis in her hands, which

causes them to spasm and "claw up" at times. Tr. 570.  The spasms prevent her from

brushing her teeth and combing her hair. Tr. 582.  Plaintiff testified that she can no

longer work due to knee joint pains, muscle spasms, sarcoidosis, suicide attempts,

depression, and auditory and visual  hallucinations. Tr. 582-584.

**B.      Magistrate's Recommendation**

The ALJ found that Plaintiff's pulmonary sarcoidosis, degenerative arthritis of both

knees, complaints of multiple joint pain, mild obstructive sleep apnea, major depression,

anxiety disorder and history of chronic abuse were "severe" impairments within the

meanings of the Regulations.  Nevertheless, the ALJ found that Plaintiff's impairments

were not "severe" enough to meet or medically equal one of the impairments listed in

Appendix 1, Subpart P, or Regulations No. 4.  The ALJ also found Plaintiff retained the

RFC for sedentary work with: (1) the ability to alternate between sitting and standing as

needed; (2) no lifting over five pounds; (3) an indoor pollutant free environment; (4) no

work around unprotected heights, (5) no climbing; (6) no driving; (7) no work around

dangerous machinery; (8) only simple and routine tasks; (9) a low stress work

environment; and (10) limited contact with the public, co-workers and supervisors.

The Magistrate says many of the objective medical findings from the relevant period support the RFC finding. The Magistrate notes that in November 2000, Dr. I.S. Villarosa found Plaintiff's chest x-ray to be normal and x-rays of the knees indicated degenerative arthritis. Tr. 369.  A week later, Dr. Loutfi Aboussouan, Plaintiff's treating physician, found Plaintiff's asthma and sarcoidosis appeared fairly stable without the use of prednisone. Tr. 433.  Accordingly, the ALJ limited her to sedentary work with the option to stand or sit at will and required her work environments to be pollutant-free, to control for her joint pain and shortness of breath.

As for Plaintiff's mental limitations, the Magistrate contends the ALJ considered the evidence for the relevant period.  The Magistrate notes that the ALJ performed the proper psychiatric review technique and found Plaintiff has: (1) mild limitations in her activities of daily living, (2) moderate limitations in social functioning, and (3) moderate limitations in concentration, persistence or pace.  The ALJ also found Plaintiff's allegations regarding her limitations were not totally credible because they were not fully corroborated by the objective medical evidence.  For example, she was able to live with her children, perform household chores, manage funds, and care for her personal needs.  Accordingly, the ALJ asked the VE whether an individual of Plaintiff's age, education, and work experience could perform any jobs if the individual was limited to: (1) sedentary work with a sit/stand option; (2) lifting no more than 5 pounds; (3) performed indoors free of dust, fumes and atmospheric pollutants: (4) no unprotected heights; (5) no work around dangerous machinery; and (6) simple and routine work. Tr. 588-589.  Further, the individual would have little to no contact with others. Tr. 589.

The VE testified that such an individual could not perform Plaintiff's past relevant work, yet there were other jobs that fit the parameters of the ALJ's hypothetical, including about 5,000 jobs in bench type operations involving packing, sorting, inspection and assembly. Tr. 589. The VE also testified that such jobs would only require approximately a day of vocational adjustment for a person with Plaintiff's background. Tr. 589. The ALJ found Plaintiff could perform a range of sedentary work, and relied on the VE's testimony to find there were a significant number of jobs in the economy that Plaintiff could perform.

The Magistrate finds there is substantial evidence to support the ALJ's decision because the medical evidence, during the relevant period, does not provide objective support for Plaintiff's claims of severe and totally disabling impairment.

**C.      Plaintiff's Objections**

**1.      Lack of substantial evidence regarding residual mental functional capacity to perform sedentary work**

Plaintiff argues there was not substantial evidence to support the ALJ's finding that she retains the residual mental functional capacity to perform sedentary work. Plaintiff contends that because her subsequent application was granted, and she was found disabled after June 1, 2001, the ALJ was obligated to find her disabled for the time period between December 26, 1999 and June 1, 2001 absent "an event, an examination, exacerbation, crisis or some criteria to distinguish May 31, 2001 from June 1, 2001". Plaintiff says nothing in the record supports such a finding.

Defendant says an exacerbation occurred after June 1, 2001, as established by Plaintiff's own testimony. Plaintiff admitted that she started to hear voices in September 2001 and that her depression worsened. Defendant also argues that to the extent it is arbitrary to find a claimant not disabled on May 31 but disabled on June 1, it is a limitation inherent to Supplemental Security Income ("SSI") applications which only allow the grant of benefits back to the date of filing. Defendant says because the ALJ was limited to considering the evidence from the relevant period, and the evidence from that relevant period substantially supports his decision, the ALJ reasonably found Plaintiff was not disabled before June 2001.

## 2.    Failure to afford Plaintiff a Full and Fair Hearing

Plaintiff says the ALJ's failure to consider her obesity, and the numerous exhibits added following the Appeals Council's remand demonstrate the ALJ did not fully evaluate her file. Plaintiff also contends the ALJ did not comply with the Appeals Council's order to make complete findings with regard to her mental impairments in accordance with the "special technique" described in 20 CFR §416.920a.

Defendant says the ALJ acknowledged Plaintiff's long history of depression and suicide attempts, as well as the diagnosis of depression, anxiety, and alcohol abuse, then proceeded to perform the psychiatric review technique. Applying that technique, the ALJ found Plaintiff had mild limitations in her activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence or pace. Defendant also says the ALJ gave full consideration to Plaintiff's obesity in considering her RFC, as demonstrated by the restrictions for sedentary work with a sit and stand option, despite a lack of significant restriction from her respiratory disease

8

and largely normal clinical findings.

**D.      Analysis**

Plaintiff asks this Court to reverse the Commissioner's denial of disability benefits because the ALJ was required to find her disabled from December 26, 1999 through June 1, 2001 since she was subsequently found disabled on her later application. The Court declines to do so.

20 C.F. R. §416.920a requires the ALJ to follow a special technique when assessing the severity of mental health impairments.  Specifically, the ALJ must evaluate the degree of functional loss – using a five-point scale: none, mild, moderate, marked and extreme – in three areas of functioning:  activities of daily living; social functioning; and concentration, persistence, or pace; a four-point scale – none, one, two, three, four or more – is utilized to evaluate episodes of decompensation. 20 C.F. R. §416.920a(c)(4).  In addition, the ALJ must document application of this technique in the written decision. 20 C.F. R. §416.920a(e)(2).

Contrary to Plaintiff's assertion, the ALJ fully documented his application of this special review technique in his written decision.  With regard to activities of daily living, the ALJ noted Plaintiff was able to take a bus, care for her children, perform household chores, cook and would be able to manage benefit funds.  Tr. 20.  The ALJ also noted psychiatrist, Dr. Basivi Baddigam, observed that Plaintiff lived with her children, performed household chores, was able to care for her personal needs, and was able to manage funds. Tr. 20.  Performing the psychiatric review technique, the ALJ found Plaintiff had mild limitations in her activities of daily living.

9

Similarly, with regard to social functioning, the ALJ noted Plaintiff's testimony that she has no friends and that she isolates herself. Tr. 20. The ALJ also considered Plaintiff's testimony that she does not get along with family members and has no significant contact with neighbors. Tr. 20. Based on this evidence, the ALJ determined that Plaintiff's degree of limitation for social functioning was moderate.

With regard to concentration, persistence or pace, the ALJ noted that Plaintiff's memory was intact and her concentration adequate during psychiatrist, Dr. F. Qudir's, September 2001 evaluation. Tr. 20. However, the ALJ also considered Plaintiff's testimony regarding decreased concentration. Tr. 20. Consequently, the ALJ determined that Plaintiff's degree of limitation for concentration, persistence or pace was moderate.

Finally, with regard to decompensation, the ALJ noted that while Plaintiff has a history of suicide attempts, none occurred within the last two years. Tr. 20. The ALJ noted Plaintiff did not exhibit repeated episodes of decompensation, nor did the evidence indicate that a minimal increase in mental demands would cause her to decompensate. Tr. 20-21. The ALJ found this degree of limitation was non-existent.

It should be noted the Appeals Council's remand order directed the ALJ to: (1) evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F. R. §416.920a; (2) allow Plaintiff to examine certain new medical evidence which was received by the ALJ after the hearing; and (3) give further consideration to Plaintiff's maximum residual functional capacity with specific references to the record. The ALJ did all of these things. The ALJ's detailed RFC analysis demonstrates the ALJ did not merely "recite the evidence verbatim" without

10

consideration of Plaintiff's prior hospitalizations, drug overdose, anxiety attacks, and suicide attempts. Accordingly, the Magistrate correctly noted that the ALJ followed the proper review technique in assessing Plaintiff's RFC.

Moreover, there was other substantial evidence the Plaintiff had the RFC to perform a significant number of other jobs during the relevant job period. In response to the ALJ's hypothetical, the VE testified that a person of Plaintiff's age, sex, education level, and work experience would not have been able to return to work at any time based on the severity of the mental and psychological symptoms. However, with restrictions for sedentary work, not requiring the lifting of more than 5 pounds, performed indoors in a relatively pollutant-free environment, with a sit and stand option, not performed at any unprotected heights, not requiring any driving, climbing or work around dangerous or hazardous machinery, consisting of simple, routine tasks, with low stress and limited contact with the public, co-workers or supervisors, someone with Plaintiff's background could have been able to perform bench-type jobs. The VE also testified that he had observed and placed other persons in such jobs. Therefore, the ALJ relied on the VE's testimony in concluding that Plaintiff was not under a disability during the relevant time period.

The Appeals Council's remand order specifically instructed the ALJ to consider the time period before June 1, 2001. Plaintiff's application was presumably filed on December 26, 1999 (no copy of the application is contained in the court record, however the parties have indicated that is the protective date). Hence, the relevant time period under review was December 26, 1999 through June 1, 2001. Social Security Ruling 83-20. The record demonstrates the ALJ admitted the later received medical

11

evidence as exhibits at the second hearing, and he specifically refers to those exhibits in his decision. Tr. 20.  This indicates he did give consideration to the new evidence, even though much of the evidence was dated after June 1, 2001.  Those records, from September 2001, indicate Plaintiff's mental condition was worse than prior months and she was now experiencing auditory hallucinations. Tr. 498.  As a result, her diagnosis changed from major depression recurrent to major depression with psychosis. Tr. 499.  By contrast, the objective findings from the relevant period indicate that despite her history of depression, Plaintiff denied: (1) having hallucinations; (2)  had no systemized delusions or perceptual disturbances; and (3) had normal judgment, mood, affect and insight Tr. 183-184, 204-205, 449,

The Magistrate also found the ALJ gave adequate consideration to the impact of Plaintiff's obesity in his RFC finding.  This determination is supported by clinical findings which showed despite some evidence of clinical arthritis of the left knee which required a cane for long distance walking, Plaintiff had normal extremities evaluations, minimal swelling of the knee, and normal pulmonary function tests during the relevant period. Tr. 188, 211, 218, 425, 449, 455.  It is also supported by the absence of any evidence in the record that Plaintiff's obesity exacerbated her impairments.  Accordingly, Plaintiff's claim that the ALJ did not properly evaluate her obesity cannot stand.

Because substantial evidence supports the ALJ's conclusion that Plaintiff retained sufficient residual mental functional capacity and that Plaintiff was not disabled during the relevant time period, the decision should not be overturned.

**V.  CONCLUSION**

The Court **ADOPTS** Magistrate Pepe's recommendation, **GRANTS** Defendant's

Motion and **DENIES** Plaintiff's Motion.

        **IT IS ORDERED**.

                                          s/Victoria A. Roberts
                                          Victoria A. Roberts
                                          United States District Judge

Dated:  August 12, 2008

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 12, 2008.<br><br>s/Linda Vertriest<br>Deputy Clerk |